JOSEPHINE L. PEYTON, Respondent, *v.* THE NEW YORK ELEVATED RAILROAD COMPANY and Another, Appellants.

*Elevated railroads — past trespasses — when an expert witness cannot give an opinion — admission of evidence possibly affecting the result not disregarded on appeal.*

In an action brought by the owner of premises upon Third avenue, in the city of New York, to recover for past trespasses of the elevated roads of said city, and to obtain an injunction restraining the further running of their trains, an expert witness testified on behalf of the plaintiff that rents were less upon the avenue than before the elevated roads were built, and that a better class of tenants could be had on a street, referred to by him, where there was no such road, than on Third avenue.

He was then asked to what he ascribed the change in the character of Third avenue, and replied, " To the elevated road."

*Held*, that the answer was improper, as being an expression of opinion, when the witness should have confined himself to a statement of the facts.

That, for a similar reason, he should not have been allowed to state, in answer to a question as to the " effects produced " by the elevated road in Third avenue, that he knew that the noises, dust and cinders kept people away from there.

Nor should he have been permitted to answer the question: " How does the rental of property on First avenue compare with property on Second avenue and Third avenue, in that locality," by saying that it rented better on First avenue, and that there was no elevated road there.

That where an error has been committed in excluding or admitting evidence upon a trial, and the court cannot say that this had no effect whatever upon the result, a new trial should be granted. (BARRETT, J., dissenting.)

APPEAL by the defendants, the New York Elevated Railroad Company and the Manhattan Railroad Company, from a judgment of the Supreme Court, entered, upon the report of a referee, in the office of the clerk of the city and county of New York on the 14th day of March, 1891, adjudging a recovery by the plaintiff for past damages; also granting an injunction, unless the defendants acquired the plaintiff's easements, enjoyed by them in the premises, which they might do upon payment within thirty days of a sum specified in said judgment.

*Davies & Rapallo*, for the appellants.

*Charles A. B. Pratt, Jr.*, for the respondent.

Daniels, J.:

The plaintiff was the owner of premises, consisting of a lot of land and the building thereon, situated on the corner of One Hundred and Nineteenth street and Third avenue, in the city of New York. The lot and building were bounded twenty-eight feet on the avenue and eighty feet on the street. The building was five stories in height above the first floor. This floor was used as a store and the upper stories as flats or tenements. The plaintiff became the owner of the property in January, 1886, when the store and the basement under it were in the occupancy of tenants, and the action was brought for the damages sustained by the plaintiff by the erection and operation of the elevated railway, and to secure an injunction restraining such use of the street by the defendants. Upon the trial evidence was given from which it could be inferred by the referee that the damages found to have been sustained by the plaintiff, in consequence of the maintenance of the structure and the operation of railway trains upon it, was the sum allowed by him for that purpose. The amount of damages which was considered to have been sustained by the plaintiff from these causes was the sum of $740.80. There was also in the case evidence indicating the value of the easements taken and appropriated by the railway companies in the maintenance of the structure and the operation of the trains upon it, and that value was determined by the referee to be the sum of $1,800, and upon the payment of that amount the defendants were permitted, by the judgment entered upon the report, to acquire the title to these easements. The evidence as to both these subjects was close and conflicting, and all of it appears to have been important, so far as it was given, in the consideration of the question of damages as well as of the value of the easements.

In the course of the examination of the witness, Thomas F. McLaughlin, who was a real estate broker having his place of business on Third avenue, and not far from the premises in question, he testified that the rents were less on Third avenue at the time of the trial than they were before the building of the railroad, and that a better class of people could be obtained as tenants on the street referred to by him than were obtainable for the use of property upon the avenue. The witness was then asked: " To what do you

ascribe this change in the character of the tenants or dwelling portion of the premises on Third avenue, which you have stated took place?" To this question the defendants' counsel objected on the ground that it was incompetent, irrelevant and immaterial, and as calling for the opinion of the witness. The referee overruled the objection, and the counsel for the defendants excepted, and the witness answered, "To the elevated road." He was then asked: "What are the effects produced by the elevated road on Third avenue," and this was objected to as incompetent, irrelevant and immaterial, but the objection was overruled and the counsel for the defendants excepted. The witness then answered that he knew that "the noises, dust and cinders had kept people away from there. They have got to keep their windows closed in summer time, and if they open them the cinders blow in and sometimes it darkens up the apartments and you can't see across the street. In my opinion, that has an effect upon the rental value of the premises. The rents of property on Third avenue which I had charge of before the road have decreased since the coming of the road. I ascribe that to the cause I just named — the construction and maintenance of the elevated railroad. I do not know any other cause which would have had, during these past years, any detrimental effect upon the rental value of Third avenue properties for dwelling purposes." These answers, especially the one first given, was no more than the expression of the opinion of the witness, and it bore upon a vital part of the controversy between these parties; and as an opinion it does not appear to have been legally received by the referee (*McGean* v. *Manhattan Ry. Co.*, 117 N. Y., 219; *Avery* v. *N. Y. Central., etc., Co.*, 121 id., 31–43; *Wyman* v. *Lexington, etc., Co.*, 13 Metc., 316), and it was not authorized by anything which has been said in the case recently decided of *Roberts* v. *New York Elevated Railway Company* (40 N. Y. St. Rep., 454). The witness was also asked: "How does the renting of property on First avenue compare with property on Second avenue and Third avenue in this locality?" This was objected to as calling for incompetent evidence, and as irrelevant and immaterial, but the question was allowed to be answered by the referee, and the defendants' counsel excepted. His answer was that "it rents very much better on First avenue; there is no elevated road on First avenue. It rents better on First avenue than it does on

Second and Third. First avenue has been far superior to Second or Third; better prices, and you can keep it rented. There is no elevated railroad on First avenue." This evidence seems to have been received in the same view as the answers to the preceding questions were allowed to be given; and the ruling permitting the answers allowed the witness to declare his inferences from the facts instead of proving the facts themselves, and permitting that to be done, as the law regularly required it should be, by the referee. That seems to have been improper within the authorities already referred to, as well as the case of *Drucker* v. *Manhattan Railway Company* (106 N. Y., 157). The facts, as they appear to have been in the mind of the witness, were all capable of being described and expressed in language enabling the referee to receive as clear a, comprehension of them as that which was possessed by the witness; and for that reason these facts, instead of the opinions or deductions of the witness, should alone have been taken, leaving the referee, as it was his peculiar province, to draw such inferences from them as he considered to be justifiable.

The case upon the evidence was not so far proved as to allow the conclusion to be drawn that the referee's mind was not affected by this objectionable testimony. It is, on the contrary, wholly probable that it entered into his determination and contributed to the support of the conclusions reached by him, not only as to the damages, but as to the value of these easements, and for that reason the error of the referee in permitting this evidence to be given cannot be disregarded. (*Baird* v. *Daly*, 68 N. Y., 547.) It was said in that case, under analogous circumstances, "that we cannot say that the exclusion or admission of any of the evidence to which objection was taken upon the trial, however slight or of little weight it may seem, may not have influenced the result, and if error was committed, either in admitting or rejecting evidence against the objection and exception of the defendants, a new trial should be had." (Id., 549.) And this rule was followed and applied in *Matter of Eysaman* (113 N. Y., 62). And it was also held in *Murray* v. *Great Western Insurance Company* (4 N. Y. St. Rep., 624), that it should clearly appear that the party against whom inadmissible evidence has been received has not been injured by the evidence, before the court on appeal will be at liberty to disregard it.

The point whether the elevated railroad, and the trains used upon it, had depreciated the value of the property was one of the most important, if not the most important, involved in the trial of the action.    It was not a fact which could be established by opinion or inference on the part of witnesses.    This seems to be the result now of all the authorities, which require that the facts alone should employ the attention of the witnesses, whose evidence may be relied upon as supporting the conclusions intended to be maintained in the case.

And, as that was not the course taken upon the trial, the judgment should be reversed and a new trial ordered, with costs to the defendants to abide the result.

Van Brunt, P. J., concurred.

Barrett, J. (dissenting):

I am unable to concur with Mr. Justice Daniels in this case. The judgment is plainly a righteous one, and it is amply supported by the evidence.    Even if the rulings of the learned referee in the admission of evidence are properly the subject of criticism, the defendants were not prejudiced, and the objections on that head are too slight to warrant the reversal of so just and moderate a judgment.    But I think the rulings of the learned referee were correct, and that the evidence objected to was properly admitted.    No case has gone so far as to exclude the opinion of experts with regard to changes in the character of tenants and tenements, and the causes thereof.    The great question which has agitated the courts, and which has been finally settled by the Court of Appeals, was whether an opinion could properly be given as to the value of property on the line of the elevated railway in case the structure were not there. This has finally been solved against the admission of such evidence. (*Roberts* v. *The New York Elevated Railway Company*, 40 N. Y. St. Rep., 454; *Gray* v. *The Same*, Id., 478.)    The question objected to in the case at bar is covered neither by the point decided in these cases nor by the reasoning of the opinions, whereas in the Doyle case (same volume, page 474), almost identical questions were held to be proper and a judgment was reversed because of their exclusion. It is, indeed, difficult to perceive why an expert may not give his judgment upon a matter so entirely within the domain of experience as changes in the character of a street or in the occupation thereof.

Upon what principle is his expert knowledge as to the cause of such changes to be excluded? He is not speculating as to what would be the value of the property if the changes had not taken place. He merely says that where well-to-do people formerly occupied an entire floor, it is now necessary to divide the floor into two apartments and to rent each apartment to an inferior tenant. And, in his opinion, this change is due to the elevated railway. Now, what is this but a statement of his observation and experience? The very next answer illustrates the point. For there he tells us just what he founded his previous opinion upon. People objected to noises, dust and cinders. They objected to keeping their windows compulsorily closed in summer and to the darkening of their rooms. This is what he saw. These complaints are what he heard. He observed well-to-do tenants leaving on account of these annoyances and a cheaper class taking their places. He also observed that the flats had to be altered to suit the new condition of things, and to accommodate the building to lower rents. An opinion as to the cause of these changes does not substitute the judgment of the expert for that of the court upon any question of value or of damages. It is merely an opinion as to a change of condition. It is purely an observation not only of the fact of the change, but of the causes thereof. For surely personal knowledge of the reasons given by a multitude of tenants for their coming and going is necessarily observation and experience.

I have said that such questions were explicitly sustained in the Doyle case. A brief extract from the opinion will demonstrate this:

" The defendants," said Earl, J., " put the following questions to several witnesses who had done business for several years upon Sixth avenue, in the vicinity of the plaintiff's premises, and who appeared to be familiar with the avenue and its business and competent to speak in reference thereto: ' What have you observed in respect of the effect of the elevated railroad upon property in this avenue? What has been the effect of the elevated railroad upon Sixth avenue as a business street? ' "

The court held that these questions were competent, Earl, J., observing that they " called not so much for the opinions of the witnesses, as for facts open for their observation." Reference was there made to the Drucker case (106 N. Y., 157), where similar evidence was held to be competent, the particular question being: " What

effect, if any, has it (the railroad) had upon the business of that store?" The answer to this question was almost precisely the same as that objected to in the case at bar. It was as follows:

"Customers don't come there any more, as they used to, on account of the smoke, dirt, noise and cinders what is there; and it is very dark in the stores."

The other question discussed by Mr. Justice DANIELS was, in my judgment, equally unobjectionable. A general comparison between the rental of property on the line of the railway and of property on neighboring streets and avenues has always been permitted. The question is said to call for inferences from facts rather than the facts themselves. But, with great respect, I think the question did call for facts, none the less because such facts were general rather than particular. If particular instances had been asked for, they might have been objected to as calling for special bargains. The proper course was to inquire as to the general character of rental values on the avenue in question, and to compare such values with those on neighboring streets and avenues. This was precisely what was authorized in the Drucker case when Judge FINCH observed that "a survey of the general facts" was required to ascertain how much the plaintiff was injured by the impairment of his easements. It was also within the character of evidence authorized in the Roberts case, where Judge PECKHAM remarked, that "proof might be made of the filling up of the side streets along the lines of this railroad, and of the incoming of a large population, the erection of buildings somewhat similar to plaintiff's and their rental and fee value, and finally a general statement of the condition and value of property in the neighborhood of that in question could be proved."

When we consider, also, that the answer to this question amounted to nothing more than this — that property rents very much better on First avenue, where there is no elevated road, than it does on Second and Third avenues, where there is one — the appellant's point on this head seems trivial and wholly insufficient to warrant the disturbance of the report.

In my judgment, there should be an affirmance, with costs.

Judgment reversed and new trial ordered, with costs to defendants to abide result.